ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | Civil Action No.:_____ |
| Thomas Frankenberry and Sansani Frankenberry, | **SUMMONS** (Jury Trial Demanded) |
| Plaintiffs, | |
| vs. | |
| Sig Sauer, Inc., | |
| Defendant. | |

**TO:   THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the counsel for Plaintiffs at Post Office Box 1473, Columbia, South Carolina 29202, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

|  |  |
|---|---|
| | TURNER PADGET GRAHAM & LANEY, P.A. |
| September 16, 2019     By: | s/ Ross C. DuRant |
| | Richard S. Dukes, Jr. (S.C. Bar No. 16563) |
| | J. Kenneth Carter, Jr. (S.C. Bar No. 12812 ) |
| | Ross C. DuRant (S.C. Bar No. 103623) |
| | rdukes@turnerpadget.com |
| | kcarter@turnerpadget.com |
| | rdurant@turnerpadget.com |
| | Post Office Box 1473 |
| | Columbia, SC 29202 |
| | Phone: (803) 254-2200 |
| | Fax: (803) 799-3957 |
| | **ATTORNEYS FOR THOMAS & SANSANI FRANKENBERRY** |

1

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF HORRY<br><br>Thomas Frankenberry and Sansani Frankenberry,<br><br>         Plaintiffs,<br><br>  vs.<br><br>Sig Sauer, Inc.,<br><br>         Defendant. | IN THE COURT OF COMMON PLEAS<br><br>Civil Action No. : _____<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

NOW COMES PLAINTIFFS, THOMAS FRANKENBERRY & SANSANI FRANKENBERRY, by and through the undersigned attorneys, alleging and submitting the following claims against the above-named Defendant.

### GENERAL ALLEGATIONS

1. Plaintiff, Thomas Frankenberry ("Thomas" or "Plaintiff"), is a resident of the County of Horry, State of South Carolina, now and at all times relevant to this lawsuit.

2. Plaintiff, Sansani Frankenberry ("Sansani"), is a resident of the County of Horry, State of South Carolina, now and at all times relevant to this lawsuit.[1]

3. Defendant Sig Sauer, Inc. ("Sig Sauer" or "Defendant") designs and manufactures firearms for military and commercial purposes in South Carolina, across the United States, and internationally, and is a resident of a state other than the State of South Carolina.

4. At all times relevant to this lawsuit, Plaintiff was the owner and licensed concealed carrier of a P320 handgun, which was manufactured by Defendant.

---

[1] Thomas and Sansani Frankenberry may be referred to collectively as "The Plaintiffs."

## JURISDICTIONAL STATEMENT

5. Plaintiff incorporates by reference the allegations contained in paragraphs one through four above within this jurisdictional statement as if the same were fully setout herein.

6. The factual allegations which are the subject of this lawsuit occurred in Myrtle Beach, South Carolina, Horry County, and this Court has subject matter jurisdiction.

## VENUE

7. Venue is proper in this county under S.C. Code Ann. § 15-7-30(C)(1976).

## FACTUAL ALLEGATIONS

8. The incident occurred on the afternoon of October 11, 2016 in the men's restroom of a Chick-fil-A fast food restaurant located at 2360 Dick Pond Road, Myrtle Beach, South Carolina.

9. As a former police officer of the New York Police Department, an avid gun enthusiast, a supporter for one's Second Amendment right to bear arms, and holding a Federal HR218 Permit that requires recertification every year, Thomas was legally carrying a P320 handgun in his waistband, at the time of the incident.

10. While Thomas was finished using the restroom and exiting the bathroom stall, a round discharged from the weapon without the trigger or gun being touched.

11. The P320 fired one nine millimeter bullet, which entered through Thomas' hip area, tunneled through his upper thigh, narrowly missed his femoral artery, and lodged into his knee cap.

12. X-rays and medical diagnosis taken after the incident show the massive damage to his right leg, along with severe trauma, acute pain, an infected gunshot wound, and the bullet and shrapnel, which remained lodged in his leg.

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

13. The gunshot wound led to a substantial amount of emergency surgeries, frequent hospital visits, medical procedures, and physical therapy sessions over the course of many months, and multiple years.

14. While the full extent of the physical damage to his leg is not yet known, it is likely that he will have trouble running or walking normally again, and may not be able to return to work as a result.

15. This gruesome injury will result in ongoing pain, and will continue to affect Thomas for the remainder of his life, both physically and emotionally.

16. The incident has resulted in substantial physical harm and related trauma to Thomas, who has received substantial and ongoing pain-killing narcotics to deal with the injury and function on a day-to-day basis.

17. Sig Sauer expressly represented and warranted that "[w]e've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."

18. In additional marketing claims, Sig Sauer further states: The Striker Safety "[p]revents the striker from releasing unless *the trigger is pulled*."

19. Simultaneously, Sig Sauer stated in the P320's original owner's manual, that the weapon may fire if dropped without the trigger being pulled if the chamber is not empty, in direct contradiction of the above-mentioned advertisements.

20. Moreover, Sig Sauer expressly represented since its manufacture and distribution of the P320 into the stream of commerce that the weapon was drop safe without a safety.

21. Upon information and belief, at the time Sig Sauer sold the P320 in question to Thomas, their original design and manufacture of the weapon was defective and rendered it

4

unreasonably dangerous for its intended uses, and for many foreseeable uses and accidents involving its intended uses.

22.     Upon information and belief, the P320 lacked a mechanical disconnect device within the weapon (which has since been added for purchasers who asked Sig Sauer to install one), possessed an inadequate sear, and lacked any sort of external safety or tabbed trigger safety among other design and manufacturing defects.

23.     When the weapon was sold to Thomas by Sig Sauer, it knew, or should have known, that the P320 was defective and unreasonably dangerous for its ordinary uses, intended uses, and all other foreseeable uses and accidental discharges that could occur in the ordinary course of using and carrying the weapon.

24.     Upon information and belief, there had been many prior incidents of unintended discharges involving Sig Sauer weapons that have been discharged without the trigger being pulled, or simply while being handled, accidentally dropped, or while being holstered.

25.     For example, the San Francisco Police Department, which issued Sig Sauer P320s as its primary sidearm, reported 29 accidental discharges between 2005 and 2011.

26.     On August 8, 2017, Sig Sauer announced a "voluntary upgrade" program for the P320 pistol, stating that it meets "rigorous testing protocols for global military and law enforcement agencies."

27.     The upgrade program, which was presented to the public as purely optional, not urgent nor mandatory, offered to make existing commercial versions of the P320 "better" by installing a much lighter trigger, an internal disconnect switch, and an improved sear to prevent accidental discharges. Based upon subsequent reports of additional unintentional discharges of even "upgraded" P320 pistols, the voluntary upgrade program did not fully address the design

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

and manufacturing defects and the weapon remains unsafe, despite Sig Sauer's repeated public protestations to the contrary.

28. Since the optional upgrade program was announced, several police departments issued emergency orders and recalls to remove the P320 from service, strictly due to safety concerns and unintentional discharges from a defect with the P320 handgun.

## FOR A FIRST CAUSE OF ACTION
### (Negligence)

29. Plaintiffs readopt and re-allege all of the preceding paragraphs of this Complaint as if fully set forth herein.

30. At all relevant times, Sig Sauer owed Plaintiff the duty to design the P320 handgun in such a manner and with the exercise of such reasonable care, so as to prevent it from inadvertently firing while simply carrying it in his waistband while exiting a restroom, before selling the gun and placing it into the stream of commerce. To any extent Sig Sauer did not owe this duty of care under existing South Carolina law, it assumed such a duty by virtue of its past conduct and knowledge prior to the incident.

31. At all relevant times, Sig Sauer owed Plaintiff the duty to design, manufacture, assemble, inspect and test its P320s in such a manner and with the exercise of such reasonable care, so as to prevent it from inadvertently firing while simply carrying it in his waistband while exiting a restroom, before selling the gun and placing it into the stream of commerce. To any extent Sig Sauer did not owe this duty under existing South Carolina law, it assumed such a duty by virtue of its past conduct, including but not limited to, its act of recalling other defective weapons from the marketplace.

32. At all relevant times, Sig Sauer owed Plaintiff the duty to unambiguously and adequately warn consumers and/or intended users of the P320 handgun, including Thomas, of

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

known or suspected defects that rendered the gun unreasonably dangerous to handle or use. Upon information and belief, Sig Sauer knew or had reason to know that the P320 posed an unreasonable risk of harm by virtue of numerous claims arising from substantially similar incidents, prior to the one at issue in this lawsuit, involving unauthorized firings of P320s without pulling the trigger, as well as internal testing and research, industry publications and research, and other sources of information to be sought in discovery. To any extent Sig Sauer did not owe this duty under existing South Carolina law, it assumed such a duty by virtue of its past conduct, including but not limited to, its act of recalling other defective weapons from the marketplace.

33. Sig Sauer breached the above-referenced duties in a plethora of ways, including but not limited to, one or more of the following ways:

    a. By failing to use due care in designing and manufacturing the P320's trigger, including but not limited to its mass and weight, so as to prevent unintentional discharges;

    b. By failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent accidental discharges;

    c. By failing to issue a mandatory recall of the P320 as Sig Sauer had done in the past with other defective products, and instead announcing a "voluntary upgrade" of the weapon, which it knew to be defective and prone to accidental discharges based on all information available to it;

    d. By failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge unintentionally as described above;

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

e. By negligently failing to unambiguously and adequately warn purchasers and foreseeable users of the gun, including Thomas, of the aforementioned defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known through the exercise of ordinary care;

f. By failing to discover the defective, hazardous and unreasonably dangerous conditions pertaining to the gun's propensity to discharge accidentally, while in possession of Sig Sauer, and during which times employees, servants, and agents of Sig Sauer had an opportunity to inspect, service, and work on the gun;

g. By negligently failing to utilize adequate warnings to its consumers warning them about the possibility of accidental discharge, despite Sig Sauer knowing of several instances of such taking place; and

h. Despite knowing the danger in not doing so, in failing to undertake reasonable actions upon discovering that all of the subject guns had the propensity to fire at times unintended by the user and without the user purposely activating the trigger with the intention to fire the gun thereby which, if undertaken when the knowledge was available to Defendant, would have prevented the Plaintiffs' injuries and damages described herein.

34. Sig Sauer knew, or should have known, that exposing users to the dangerously defective and hazardous conditions existing in the handgun would or could give rise to serious bodily injury to its consumers and users, including death.

35. The defective condition(s) in the P320 handgun were latent and Thomas was not capable of realizing the dangerous condition, and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

36. Sig Sauer's negligence as alleged in this first cause of action both directly and proximately caused the accidental discharge of Thomas' P320 handgun on October 11, 2016, and subsequent injuries resulting from the incident.

37. As a direct and proximate result of the negligence set forth in this cause of action, Thomas suffered severe physical injury, mental anguish, inconvenience, loss of capacity for enjoyment of life, both temporary and physical deformity and disability, embarrassment, loss of earnings and earnings capacity, and incurred substantial medical, nursing, hospital, and physical therapy expenses through surgeries, care, and treatment. These injuries are permanent and continuing in their nature and Thomas will suffer such losses and impairments in the future, and likely for the rest of his life.

## FOR A SECOND CAUSE OF ACTION
### (Strict Liability)

38. Thomas readopts and re-alleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

39. At all relevant times, Sig Sauer was in the business of marketing, manufacturing, selling, and distributing weapons, including the weapon which caused Plaintiff's injuries.

40. Sig Sauer's P320 handgun was in a defective condition unreasonably dangerous for its intended use of carrying and/or concealing the weapon on one's person, without inadvertently discharging.

41. While Sig Sauer was in the business of selling weapons, it sold Thomas a P320 handgun which was in a defective condition and unreasonably dangerous, and was in the same condition at the time of the incident as it was when it left Sig Sauer's control; put another way, at the time Sig Sauer's handgun was sold to Plaintiff, it was unreasonably dangerous to be carried or concealed on one's person.

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

42. Sig Sauer knew or should have known of at least one safer alternative design which would have prevented the severe injuries to Thomas.

43. As a direct and proximate result of the defects of the P320 sold by Sig Sauer to Thomas, as set forth in this Cause of Action, Thomas suffered severe physical injury, mental anguish, inconvenience, loss of capacity for enjoyment of life, both temporary and physical deformity and disability, embarrassment, loss of earnings and earnings capacity, and incurred substantial medical, nursing, hospital, and physical therapy expenses through surgeries, care, and treatment. These injuries are permanent and continuing in their nature and Thomas will suffer such losses and impairments in the future, and likely for the rest of his life.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

44. Thomas readopts and re-alleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

45. At all times relevant, Sig Sauer was in the business of marketing, selling, and distributing weapons, including the gun causing Plaintiff's injuries.

46. Sig Sauer knew of the ordinary purposes for which the gun was intended and impliedly warranted it to be of merchantable quality, safe, and fit for such purposes (which included carrying it on your person) and all other reasonably foreseeable uses.

47. At all times relevant, Thomas used the gun in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of Sig Sauer.

48. Sig Sauer breached the above-referenced implied warranties as to the gun because, at the time it left Sig Sauer's possession, it was not of merchantable quality and was

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses by virtue of:

    a. Failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent accidental discharges;

    b. Failing to issue a mandatory recall of the P320 as Sig Sauer had done in the past with other defective products;

    c. Failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge unintentionally as described above;

    d. Negligently failing to unambiguously and adequately warn purchasers and foreseeable users of the gun, including Thomas, of the aforementioned defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known through the exercise of ordinary care;

    e. Failing to discover the defective, hazardous and unreasonably dangerous conditions pertaining to the gun's propensity to discharge accidentally, while in possession of Sig Sauer, and during which times employees, servants, and agents of Sig Sauer had an opportunity to inspect, service, and work on the gun; and

    f. Negligently failing to utilize adequate warnings to its consumers warning them about the possibility of accidental discharge, despite Sig Sauer knowing of several instances of such taking place.

49. Thomas, as the purchaser, owner, and ultimate user of the gun, was a person who would foreseeably be injured by breaching the implied warranty referenced in this Cause of

11

Action and Sig Sauer's breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on October 11, 2016.

50.  As a direct and proximate result of the breaches set forth in this Cause of Action, Thomas suffered severe physical injury, mental anguish, inconvenience, loss of capacity for enjoyment of life, both temporary and physical deformity and disability, embarrassment, loss of earnings and earnings capacity, and incurred substantial medical, nursing, hospital, and physical therapy expenses through surgeries, care, and treatment. These injuries are permanent and continuing in their nature and Thomas will suffer such losses and impairments in the future, and likely for the rest of his life.

### FOR A FOURTH CAUSE OF ACTION
### (Breach of Warranty of Fitness for a Particular Purpose)

51.  Thomas readopts and re-alleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

52.  At all times relevant, Sig Sauer was in the business of marketing, selling, and distributing weapons, including the gun causing Plaintiff's injuries. Upon information and belief, Sig Sauer knew or had reason to know that the gun would be stored and/or concealed on a user's person at the time they sold the gun, and that Plaintiff was in fact relying on Sig Sauer's skill, judgment, and implied warranty of the gun's fitness for that particular purpose without firing a bullet into his leg.

53.  Accordingly, Sig Sauer impliedly warranted that the gun was suitable for the particular purpose of being carried and/or concealed on a user's person while not in use, as is the right of any Concealed Weapons Permit owner.

54. At all times relevant, Thomas used the gun in its intended manner and for its intended purpose and reasonably relied on the skill, judgment and implied warranty of Sig Sauer in using, carrying, and handling the gun.

55. Sig Sauer breached the above-referenced implied warranty as to the gun in that it was unreasonably dangerous and unfit to be carried and/or concealed at the time it left Sig Sauer possession by virtue of:

    a. Failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent accidental discharges;

    b. Failing to issue a mandatory recall of the P320 as Sig Sauer had done in the past with other defective products;

    c. Failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge unintentionally as described above;

    d. Negligently failing to unambiguously and adequately warn purchasers and foreseeable users of the gun, including Thomas, of the aforementioned defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known through the exercise of ordinary care;

    e. Failing to discover the defective, hazardous and unreasonably dangerous conditions pertaining to the gun's propensity to discharge accidentally, while in possession of Sig Sauer, and during which times employees, servants, and agents of Sig Sauer had an opportunity to inspect, service, and work on the gun; and

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

  f. Negligently failing to utilize adequate warnings to its consumers warning them about the possibility of accidental discharge, despite Sig Sauer knowing of several instances of such taking place.

56. As a direct and proximate result of the breaches set forth in this Cause of Action, Thomas suffered severe physical injury, mental anguish, inconvenience, loss of capacity for enjoyment of life, both temporary and physical deformity and disability, embarrassment, loss of earnings and earnings capacity, and incurred substantial medical, nursing, hospital, and physical therapy expenses through surgeries, care, and treatment. These injuries are permanent and continuing in their nature and Thomas will suffer such losses and impairments in the future, and likely for the rest of his life.

### FOR A FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)

57. Thomas readopts and re-alleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

58. Sig Sauer expressly represented to all consumers, including Thomas and prior to the incident in question, that it "designed safety elements into every necessary feature in this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."

59. In additional marketing, Sig Sauer further states: The Striker Safety "[p]revents the striker from releasing unless *the trigger is pulled*."

60. Sig Sauer updated its warranty in 2017, a year after Thomas suffered severe injuries from unintentional discharge, to represent that: "careless and improper handling of any firearm can result in unintentional discharge."

14

61. Sig Sauer further expressly represented that "safety isn't negotiable. The P320 maximizes peace of mind with a robust safety system. Never again will you need to pull the trigger to disassemble your pistol. And, while available as an option, you won't need a tabbed trigger safety for your gun to be drop safe."

62. Sig Sauer made other express warranties regarding the safety of the P320 and the reliability of not having to worry about unintentional discharge to be further revealed throughout discovery.

63. Sig Sauer breached the above-referenced express warranties and others to be determined as to the gun in that it was unreasonably dangerous and unfit to be carried and/or concealed at the time it left Sig Sauer's possession by virtue of:

   a. Failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent accidental discharges;

   b. Failing to issue a mandatory recall of the P320 as Sig Sauer had done in the past with other defective products;

   c. Failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge unintentionally as described above;

   d. Negligently failing to unambiguously and adequately warn purchasers and foreseeable users of the gun, including Thomas, of the aforementioned defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known through the exercise of ordinary care;

ELECTRONICALLY FILED - 2019 Sep 16 2:06 PM - HORRY - COMMON PLEAS - CASE#2019CP2605853

e. Failing to discover the defective, hazardous and unreasonably dangerous conditions pertaining to the gun's propensity to discharge accidentally, while in possession of Sig Sauer, and during which times employees, servants, and agents of Sig Sauer had an opportunity to inspect, service, and work on the gun; and

f. Negligently failing to utilize adequate warnings to its consumers warning them about the possibility of accidental discharge, despite Sig Sauer knowing of several instances of such taking place.

64. As a direct and proximate result of the breaches set forth in this Cause of Action, Thomas suffered severe physical injury, mental anguish, inconvenience, loss of capacity for enjoyment of life, both temporary and physical deformity and disability, embarrassment, loss of earnings and earnings capacity, and incurred substantial medical, nursing, hospital, and physical therapy expenses through surgeries, care, and treatment. These injuries are permanent and continuing in their nature and Thomas will suffer such losses and impairments in the future, and likely for the rest of his life.

### FOR A SIXTH CAUSE OF ACTION
### (Loss of Consortium)

65. Sansani readopts and re-alleges all of the preceding paragraphs of this Complaint as if fully set forth herein.

66. As a result of the injuries sustained by Plaintiff's husband, Sansani has suffered damages due to the loss of his companionship, society, services, care, support, and comfort, following his severe injuries.

67. Sansani is informed and believes that she is entitled to judgement against the Defendant, for both actual and punitive damages, all of which were directly and proximately

caused by Sig Sauer's acts and/or omissions as more fully set forth above, in an amount as may be set and determined by the trier of fact in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, as compensation for injuries suffered by Sig Sauer's negligence, strict liability, breaches of its express and implied warranties, and loss of consortium, Plaintiffs demand judgment in their favor and against Sig Sauer in the amount of TEN MILLION and 00/100 DOLLARS ($10,000,000) together with pre-judgment interest from October 11, 2016, attorneys' fees, and costs.

**A JURY TRIAL IS DEMANDED.**

|  |  |  |
|---|---|---|
|  |  | TURNER, PADGET, GRAHAM & LANEY, P.A. |
| September 16, 2019 | By: | s/ Ross C. DuRant |
|  |  | Richard S. Dukes, Jr. (S.C. Bar No. 16563) |
|  |  | J. Kenneth Carter, Jr. (S.C. Bar No. 12812) |
|  |  | Ross C. DuRant (S.C. Bar No. 103623) |
|  |  | rdukes@turnerpadget.com |
|  |  | kcarter@turnerpadget.com |
|  |  | rdurant@turnerpadget.com |
|  |  | Post Office Box 1473 |
|  |  | Columbia, SC 29202 |
|  |  | Phone: (803) 254-2200 |
|  |  | Fax: (803) 799-3957 |
|  |  | **ATTORNEYS FOR THOMAS & SANSANI FRANKENBERRY** |