IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Frankenberry and Sansani Frankenberry, | ) ) ) | Case No. 4:19-cv-02990-JD |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| Sig Sauer, Inc., | ) ) ) | |
| Defendant. | ) ) | |

    This is a products liability case wherein Plaintiffs Thomas Frankenberry and Sansani Frankenberry, (collectively "Plaintiffs") allege Defendant Sig Sauer, Inc. ("Defendant" or "Sig Sauer") designed and/or manufactured a defective and unsafe P320 model pistol, which discharged without a trigger pull. Before the Court are several motions by the parties; however, there are two dispositive motions by the Defendant 1) Motion to Exclude Evidence and Opinions of Plaintiffs' Expert, Peter Villani and 2) Motion for Summary Judgment, which the Court will address herein. The parties have briefed the motions; and therefore, the motions are ripe for review and decision. After reviewing the motions and memoranda submitted, the Court grants Defendant's Motion to Exclude Evidence and Opinions of Plaintiffs' Expert Peter Villani (DE 37) and grants Defendant's Motion for Summary Judgment (DE 38) for the reasons stated herein.

## **BACKGROUND**

    Plaintiff Thomas Frankenberry ("Frankenberry"), a retired New York City Police Officer, purchased a Sig Sauer P320 handgun ("Pistol") from a gun shop in Myrtle Beach, South Carolina, for personal protection, on April 7, 2015. (DE 43-1, pp. 2:6-4:16, 10:25, 11:8-14:6, 15:7-11.) During the year and a half that Frankenberry owned the Pistol, he carried it almost every day,

1

without issue. (DE 43-1, pp. 5:18-6:7.) On October 11, 2016, Frankenberry was working as a kitchen manager at a local Chick-fil-a while carrying his Pistol "appendix style," inside the waistband on his trousers secured by a leather belt. (DE 43-1, pp. 16:5-6, 17:7-10.) Frankenberry entered the Chick-fil-A restroom while carrying his Pistol. The Pistol was secured by the tension of Frankenberry's pants and belt. (DE 37-2, p. 3:18-21.) After Frankenberry finished using the restroom in one of the stalls, he claims as he was leaving his Pistol discharged a round into his leg. (DE 1-1, ¶ 10.) Frankenberry asserts that his pants and belt remained buckled as he used the restroom and his hand was not on the trigger when the pistol discharged. (DE 37-2, pp. 4:23-5:8.)

Nobody else was in the restroom when the Pistol discharged; however, immediately after the incident, several of Frankenberry's co-workers and a Department of Natural Resources (DNR) police officer entered the restroom and found Frankenberry in the stall, bleeding from his leg. Frankenberry's boss, Nate MacDonald ("MacDonald") testified that when he got to the restroom—five-to-ten seconds after hearing the gunshot—Frankenberry's "pants were down and he was trying to put them back on." (DE 37-3, pp. 4:23-5:20.) MacDonald recalled that Frankenberry's pants were not buckled because he saw the wound on Frankenberry's thigh. (DE 37-3, p. 5:14-23 ("I know for a fact that his pants weren't buckled, zipped up and belt buckled. There was some unfastening there. And I saw his boxer briefs and the wound.").) Further, MacDonald testified that Frankenberry said he had moved the subject pistol from his waistband into his pocket while he was using the restroom, and Frankenberry stated that "when he was zipping up his pants and going to reach for it, the gun went off, and that's what he said." (DE 37-3, pp. 5:24-7:22.)

DNR Officer Joe Ard ("Officer Ard") was eating lunch in the Chick-fil-A restaurant when the accident occurred. (DE 37-4, pp. 3:20-4:2.) Officer Ard was seated at a booth near the restroom when he heard a loud noise coming from the restroom. (DE 37-4, pp. 5:9-15, 6:10-12,

2

6:23-7:19.) Officer Ard did not know it was a gunshot at the time, but the noise sounded like something unexpected, so he went to the restroom to investigate. (DE 37-4, pp. 6:23-7:19.) When Officer Ard entered the restroom, he saw Frankenberry standing in the stall with the Pistol in his hand, and Frankenberry said "I shot myself." (DE 37-4, pp. 8:16-10:9.) However, Frankenberry claims that:

> After urinating, he zipped his pants back up, bent down to flush the toilet, stood back up, and began to turn to his right to exit the stall when he heard a sudden bang. (citation omitted). His Sig Sauer P320 had just fired a round into his upper thigh. (see Summons and Complaint.... Plaintiff did not pull the trigger or contact the handgun, in any way. (citation omitted). Confused as to how his P320 could fire, Plaintiff stated "I think I'm shot," as several coworkers and bystanders entered the restroom to inquire about the noise. (citation omitted).

(DE 43, p. 2.) After the incident, Plaintiff was taken to an employee office where he sat and waited for emergency medical services to arrive. He was transported by ambulance to the hospital for treatment.

On September 16, 2019, Plaintiffs, filed the instant suit against Defendant alleging the Pistol carried by Frankenberry suffers from a manufacturing defect, which caused Plaintiffs' injuries. Plaintiffs retained Peter Villani ("Villani") to examine the Pistol and to investigate their claims. Villani serves as an Operations Officer for the United States Department of Veteran's Affairs and has for the last twenty years. (DE 44-2.) He has more than a decade of experience serving as a police officer as well as experience in the firearm consumer market, having served as a firing range manager, salesman, and instructor. (DE 44-2.) During his time as an officer, he received training on safe firearm use, ranging from handguns to advanced combat shotguns. (Id.) He has been trained and certified as an armorer in Sig Sauer P320, Sig Sauer 239, Sig Sauer 229, Beretta 92 handguns, as well as AR15 rifles, resulting in a thorough understanding of the innerworkings of each firearm, and weapon components. (DE 44-3, p. 2:11-17.)

3

However, Villani's work in this case is limited to his visual inspections of the Pistol as well as inspections of three other "exemplar" P320 pistols not involved in Frankenberry's incident. Villani was tasked solely to determine whether the Pistol could have discharged without a trigger pull—not whether it actually did so in this case. (DE 37-5, p. 2.) Based on his visual observations, Villani described various "manufacturing and design defects" associated with the four guns. (DE 37-5.) However, Villani has not done any testing to confirm any of his opinions. (DE 37-8, p. 24:16-23.)

According to Villani, the main defect which could have contributed to the Pistol firing without a trigger pull is what he calls "rollover." According to Villani, rollover is "excess material … left over from the manufacturing process that should have been removed prior to installation of a part." (DE 37-8, p. 7:9-25.) Villani testified that rollover is the major contributing factor to the Pistol discharging without a trigger pull. (DE 37-8, p. 10, 16-22 (A: "I don't think none of us would be talking today if there was no rollover.").) Notwithstanding that this "rollover" was, according to Villani, the key factor in allegedly allowing the Pistol to fire without a trigger pull, Villani did not measure or quantify the extent of this rollover in any way. Rather, during his deposition he estimated that the rollover—the difference in height between the edges of certain components and their center—was "a quarter of a millimeter maybe little less." (DE 37-8, pp. 26-27.) However, Villani stated he "would just be guessing just by looking at it" when he gave this measurement. (Id.)

## LEGAL STANDARD

**Expert Witness/Fed. R. Evid. 702**

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 589 (1993). Rule 702 was amended in response to Daubert and its progeny and now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. See Daubert, 509 U.S. at 592 n. 10. District courts serve as gatekeepers for expert testimony and carry a "special obligation" to ensure that expert testimony is reliable and relevant. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The Court must therefore ensure that an expert's testimony is based on "scientific knowledge," and "will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. The first inquiry asks "whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592-93. District Courts are guided by several factors in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593-94. These factors are not exclusive; what factors are relevant to the analysis "depend[] upon the particular circumstances of the particular case at issue." Kumho Tire, 526 U.S. at 150. In conducting the reliability inquiry,

the focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.

The second inquiry "goes primarily to relevance." Id. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. Id. at 593. "A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments. "Daubert did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Id. (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., 80 F.3d 1074, 1078 (5th Cir. 1996)).

**Federal Rule of Civil Procedure 56**

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue. Celotex Corp., 477 U.S. at 323. Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

6

"Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. Id. at 659-60.

## DISCUSSION

**Admission of Villani as an Expert**

Defendant challenges the admission of Villani as an expert on Plaintiffs' design and/or manufacturing defect claim pursuant to the Court's "gatekeeper function" raising two main concerns. See Sardis v. Overhead Door Corp., 10 F.4th 268, 283 (4th Cir. 2021) ("'[T]he importance of [the] gatekeeping function cannot be overstated[,]' Rule 702 grants experts 'wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation,' '[e]xpert evidence can be both powerful and quite misleading.'"). First, Defendant contends that Villani is not qualified to offer any opinions about design or manufacturing defects in the Pistol. (DE 37-1, p. 11.) Defendant also challenges whether Villani's opinions are reliable

7

because they rely solely on his *ipse dixit*[1] and are not corroborated by any testing or other support. (Id.) First, as to Defendant's argument that Villani is not qualified to offer an opinion about design or manufacturing defects in the Pistol, Defendant contends that Villani has no experience in firearms design, nor has he ever manufactured a firearm or firearm component or worked for a firearm manufacturer. Rather, Defendant contends that Villani is trained as an armorer for multiple firearm models, including the P320, which means that he can take apart and identify worn or damaged parts on a P320 pistol that need to be replaced with parts ordered from the manufacturer. (DE 37-1, p. 11.) Accordingly, Defendant argues that "[t]his general experience in handling and assembling/disassembling firearms, without more, does not in any way qualify Villani to render opinions on the design or manufacture of the P320 model pistol in this action. (DE 37-1, p. 12.) This Court agrees.

Federal Rule of Evidence 702 requires an expert to be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[A] witness'[s] qualifications to render an expert opinion are [] liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). "Accordingly, a challenge based on lack of qualifications alone must demonstrate that 'the purported expert [has] neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig., 214 F. Supp. 3d 478, 496 (D.S.C. 2016) (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)). "If, again in

---

[1]     Latin for "he said it himself".

the disjunctive, the proposed testimony will recount or employ 'scientific, technical, or other specialized knowledge,' it is a proper subject." Kopf, 993 F.2d at 377.

Villani's training and experience is in the field of an armorer and not a gunsmith.[2] (DE 37-8, p. 22.)  As an armorer Villani replaced damaged components with new components and evaluated firearms for resale. (DE 37-8, p. 23.)  However, there is nothing in the record to indicate that Villani has any scientific, technical, or other specialized knowledge to test or compare finished work to specification or to modify or repair component parts.  It is well established that "an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise." In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig., 214 F. Supp. 3d 478, 496 (D.S.C. 2016) (while expert may be able to opine on observations of wood deterioration based on experience, expert was not qualified to go beyond that and discuss manufacturing processes and product testing); see also Redman v. John D. Brush & Co., 111 F.3d 1174, 1179 (4th Cir. 1997) (finding that a "metallurgic engineer," who was "undoubtedly qualified to testify about the properties and characteristics of metal," was not qualified to testify about industry standards governing safe manufacturing industry).  Having reviewed the record, the Court is convinced that Villani's opinions regarding manufacturing defects extend beyond the scope of an armorer and venture into issues of firearm design and manufacturing.  Since Villani's opinion enters a different field of knowledge, Plaintiffs cannot rely on his knowledge, skill, experience, training, or education to validate his qualification in the mechanical components and component interactions of the Pistol and to explain the manufacturing defect that caused the Pistol to fail.

---

[2]     A gunsmith among other things repairs, modifies, designs, or makes guns and/or gun parts.

9

Nevertheless, Plaintiffs argue that "Villani has practical experience examining and troubleshooting weapons and their safe use through his time as an officer, shooting range manager, and armorer, experiences that demand he develop a familiarity with the innerworkings of firearms." (DE 44, p. 6.) While it appears Villani is qualified to troubleshoot gun malfunctions and give instructions on their safe use, if gun design and manufacturing defects were solely based on familiarity of firearms malfunctions or troubleshooting the same, his qualifications might be sufficient. However, "[w]here a purported expert witness has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered, that witness's testimony may be excluded." In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig., 214 F. Supp. 3d 478, 497 (D.S.C. 2016). Thus, Plaintiffs have failed to carry their burden to establish by a preponderance of the evidence that Villani is qualified to testify as an expert on the manufacturing defect that caused the Pistol to fail.

Next, assuming *arguendo* that Villani was qualified to testify as an expert on the manufacturing defect that caused the Pistol to fail, Defendant also challenges whether Villani's opinions are reliable because they rely solely on his *ipse dixit* and are not corroborated by any testing or other support. The Court equally agrees. "An expert's opinion is relevant if it has 'a valid scientific connection to the pertinent inquiry.'" Sardis v. Overhead Door Corp., 10 F.4th 268, 281 (4th Cir. 2021). "But even if relevant, an opinion must also be sufficiently reliable. Reliability is a 'flexible' inquiry that focuses on 'the principles and methodology' employed by the expert." Id. One of the factors District Courts are guided by in determining the reliability of a particular scientific theory or technique is whether it can be and has been tested. Id.

10

Plaintiffs contend that "Villani's opinions are reliable because he has conducted sufficient testing on the subject P320 to identify its manufacturing defects and opine as to their effect on the function of the handgun." (DE 44, p. 9.) Plaintiffs advance the following testing methodology:

> Villani conducted testing in this case by performing a forensic examination of the subject handgun through various means: (1) Villani field stripped the gun and examined its internal components with his naked eye; (2) he examined the gun and its internal components through the use of X-ray imaging; and (3) he examined the gun through the use of CT scanning.

(DE 44, p. 9.) However, Villani's testing was limited to the disassembly of the Pistol – which was performed by Defendant's expert, and Villani's visual examination of the internal components along with a review of unclear X-ray images, and CT-scan images of the Pistol. (DE 45, p. 9.) Villani also took measurements of the internal components of the Pistol and compared them to the measurements of components from exemplar pistols. Moreover, as to Villani's "rollover" theory, he has not confirmed that this condition could cause components that are engaged – specifically the striker foot and the sear – to lose that engagement without a trigger pull. Therefore, Villani has not done any testing to demonstrate how any defects could allow the Pistol to fire without the trigger being pulled. (DE 45-1, pp. 5-6) (Villani testified that "I wasn't hired to do any testing or attempting to make it fire uncommanded. I was just told to examine the firearm to find any potential defects."); see also Nease v. Ford Motor Co., 848 F.3d 219, 232 (4th Cir. 2017) (finding that a failure to test a hypothesis renders an opinion unreliable because "scientific methodology involves 'generating hypotheses and testing them to see if they can be falsified.'"). Accordingly, Plaintiffs have not met the Daubert standard on this factor.

Furthermore, as to the remaining factors: peer review and publication, potential rate of error, and general acceptance in the relevant community, Defendant argues these factors are not satisfied. Notably, Plaintiffs do not dispute Defendant's claim that "Villani has not identified a single peer-reviewed study, article, or published test supporting his theory," or that because he has

11

"conducted no testing, there is no technique or process against which to measure the error rate." (DE 37, pp. 15-16.) Equally, Plaintiffs do not challenge Defendant's claim that Villani's opinions have never even been raised before or accepted in the firearms community. Rather, Plaintiffs argue that Villani's conclusions are unique to this case and that the Daubert factors are non-mandatory; and therefore, its consideration by the Court is discretionary. The Court notes that "Daubert is a flexible test and no single factor, even testing, is dispositive." Nease v. Ford Motor Co., 848 F.3d 219, 232 (4th Cir. 2017). In this instance, the Plaintiffs lack of testing to show a causal connection between the purported defects and the alleged discharge without a trigger pull, coupled with not meeting the other Daubert factors, suggests Villani's testimony would be unreliable. Accordingly, Villani should be precluded from testifying in this case because he is unqualified to give any opinions on firearm design and/or manufacturing defects, and none of his theories have been tested or otherwise supported.

**Summary Judgment**

Given this Court's ruling on the Plaintiffs' expert witness, Defendant contends that Summary Judgment is warranted because Plaintiffs cannot prove the prima facie elements of their product liability claim as a matter of law. The Court agrees. In any product liability action, a plaintiff must establish that: (1) he was injured by the product; (2) the product was in essentially the same condition at the time of the accident as it was when it left the hands of the defendant, and (3) the injury occurred because the product 'was in a defective condition unreasonably dangerous to the user. Graves v. CAS Med. Sys., Inc., 401 S.C. 63, 79, 735 S.E.2d 650, 658 (2012) (quoting Madden v. Cox, 284 S.C. 574, 579, 328 S.E.2d 108, 112 (Ct. App. 1985)). A plaintiff must establish these three elements regardless of whether the theory under which he seeks to recover is

strict liability, breach of warranty, or negligence.  See Dema v. Shore Enterprises, Ltd., 312 S.C. 528, 530, 435 S.E.2d 875, 876 (Ct. App. 1993).

As a threshold matter, the Court concludes that Plaintiffs' claims fall short as a matter of law without the benefit and support of expert testimony on the ultimate issue of liability.  Absent expert testimony, Plaintiffs cannot establish that either the Pistol's defects or its inadequate warnings proximately caused Frankenberry's injuries.  See Sunvillas Homeowners Ass'n, Inc. v. Square D Co., 301 S.C. 330, 391 S.E.2d 868, 871 (S.C.Ct.App.1990) ("A products liability case may be brought under several theories including negligence, warranty, and strict liability.  In each theory the plaintiff must establish the product was in a defective condition." (citing Madden, 284 S.C. 574, 328 S.E.2d 108)).  To establish defectiveness in a technically complex case, a plaintiff must come forward with relevant and reliable expert testimony. See Graves, 735 S.E.2d at 659 (discussing the need for expert testimony in complex cases).

Nonetheless, Plaintiffs claim this case does not require an expert because it is a manufacturing not a design defect case and that they have presented sufficient evidence to create a genuine issue of material fact as to whether the Pistol was manufactured in a deficient and defective manner.  See Watson v. Ford Motor Co., 389 S.C. 434, 699 S.E.2d 169 (2010) (holding that in a design defect case "expert evidence is required where a factual issue must be resolved with scientific, technical, or any other specialized knowledge.").  However, the requirement "of presenting expert testimony to meet the burden of proof on subjects beyond the knowledge and understanding of lay jurors is by no means new."  5 Star, Inc. v. Ford Motor Co., 395 S.C. 392, 718 S.E.2d 220, 224 n.3 (Ct. App. 2011).   While South Carolina jurisprudence does not go so far as to require that plaintiffs *always* present expert testimony in manufacturing defect cases in this case, given the nature of Plaintiffs' manufacturing defect claim, expert testimony is required.

Here, among other things, Plaintiffs' defect theory (that excess material creates a lack of engagement between internal parts of a pistol and overrides two internal safety features in the Pistol) is outside the knowledge of an ordinary layperson. Plaintiffs' manufacturing defect theories would require scientific, specialized, or technical testimony to resolve any factual disputes. Since Plaintiffs have not offered any reliable testimony on their defect theory, their lack of reliable expert testimony on the issue of liability is fatal to their claim. See Oglesby v. Gen. Motors Corp., 190 F.3d 244, 249 (4th Cir.1999) ("[A] plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field." (quoting Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir.1993) (internal quotation marks omitted)). Accordingly, the Court concludes that Plaintiffs have failed to demonstrate that the Pistol was defective, or its inadequate warnings proximately caused Frankenberry's injuries.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Exclude Evidence and Opinions of Plaintiffs' Expert Peter Villani (DE 37) and grants Defendant's Motion for Summary

---

[3] Although this conclusion alone warrants entry of summary judgment in favor of Defendant as to all of Plaintiffs' claims, the Court also notes that without expert testimony linking Frankenberry's injuries to the manufacturing defect that caused the Pistol to discharge without a trigger pull, Plaintiffs have not established causation. Moreover, Plaintiffs also advance allegations of a design defect in their pleading but appear to abandon this assertion here. Nevertheless, the Court finds that Plaintiffs have also failed to present the requisite evidence of a feasible, or reasonable, alternative design. "[T]he exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design." Branham v. Ford Motor Co., 390 S.C. 203, 220, 701 S.E.2d 5, 14 (2010). Thus, with design-defect claims, an expert must not only point to a design flaw in the product, but must also "show how his alternative design would have prevented the product from being unreasonably dangerous." Holland ex rel. Knox v. Morbark, Inc., 407 S.C. 227, 237, 754 S.E.2d 714, 720 (Ct. App. 2014). Here, Plaintiffs have not offered, through Villani or otherwise, evidence of a feasible alternative design for the Pistol. Rather, Villani points to alleged design flaws and fails to propose any alternative design. Simply stating that certain features should be changed is insufficient to establish a feasible alternative design. See Holland at 720 ("[A] conceptual design is insufficient to establish a reasonable alternative design. . . .").

Judgment (DE 38); and therefore, the parties pending motions are denied as moot and Plaintiffs' case is dismissed.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

February 4, 2022
Greenville, South Carolina

15